# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA 2006 JAN 20 AM 9: 47

STATESBORO DIVISION

CLERK _L. Ilbrder_
SO. DIST. OF GA.

| | | |
|---|---|---|
| CARDELL THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 604-61 |
| | ) | |
| ZELLNER YOUNG, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

*Pro se* Plaintiff, an inmate at Smith State Prison ("SSP"), commenced this civil action pursuant to 42 U.S.C. § 1983. The matter is now before the Court on the parties' cross motions for summary judgment. (Doc. nos. 10 & 14). For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, that the motion for summary judgment filed by Defendant be **GRANTED**, that a **FINAL JUDGMENT** be entered in favored of Defendant, and that this case be **CLOSED**.

## I.   BACKGROUND

### A.   Plaintiff's Contentions

Plaintiff maintains that Defendant, the Medical Director at SSP, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. According to Plaintiff, he has had problems with dizziness, blackouts, and seizures since 1994.[1] (Doc. no.

---

[1] In his motion for summary judgment, Plaintiff avers that his claims are substantiated by his "medical files." (Doc. no. 14, p. 2). However, Plaintiff has not submitted any medical records to

14, p. 2).   As a result of these health problems, Plaintiff had a medical profile for a lower

level, bottom bunk while incarcerated at Baldwin State Prison, his place of incarceration until

2001. (Id.).

In November 2001, Plaintiff was transferred to SSP, his current place of incarceration.

Plaintiff explained his health problems to SSP medical staff, especially his tendency to feel

dizzy in the morning.  (Id. at 3).  Plaintiff was accordingly given a bottom bunk on the lower

level of the prison.  (Id.).  Yet, on February 18, 2002, Defendant discontinued Plaintiff's

medical profile, resulting in Plaintiff being given a top bunk. (Id. at 3-4). Defendant explained

that, in his "professional opinion," Plaintiff no longer needed the profile because he had not

complained of a seizure since 1998.  (Id. at 4).  On February 20, and 27, 2002, Plaintiff

purportedly had seizures, blacked out, and fell.  Following each fall, Plaintiff was taken to the

infirmary and treated by medical staff.  (Id.).  According to Plaintiff, these incidents resulted

in painful injuries to his face, right knee, and back.  (Id.).

After the falls, Plaintiff's face became swollen, and Defendant put him on a liquid diet.

(Id. at 5).  Defendant also ordered Plaintiff sent to Georgia State Prison, in Reidsville, Georgia,

for X-rays.  (Id.).  Upon his return to SSP, he was kept in the infirmary for observation until

May 2002. (Id.).  During this time Plaintiff experienced severe headaches, knee pain, and back

pain, but Defendant refused to prescribe Plaintiff anything for pain other than Motrin.  (Id.).

According to Plaintiff, Defendant's actions in discontinuing his bunk profile and refusing to

---

the Court.  The Court has explained to Plaintiff on two prior occasions that he cannot satisfy his
burden at the summary judgment stage by relying upon conclusory allegations, but that he must come
forward with some *evidence*, such as a supporting affidavit. (See doc. no. 7, pp. 6-7; doc. no. 13,
p. 1).  Accordingly, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir.
1985)(*per curiam*), have been satisfied.

give him appropriate medications for his health problems constituted deliberate indifference to his medical needs. (Id. at 6-10).

### B.    Defendant's Arguments

In contrast, Defendant argues that Plaintiff is unable to furnish any proof that Defendant was deliberately indifferent to Plaintiff's medical needs.   Defendant does not dispute that he discontinued Plaintiff's bunk profile, but avers that he thoroughly treated Plaintiff after his first alleged fall for his initial complaints of headache, back pain, and knee pain, and prescribed Percogesic.[2] (Doc. no. 11, p. 12). Also, according to Defendant, he was not the doctor who initially treated Plaintiff following the fall on February 27th, but the doctor on call at the time did admit Plaintiff to the infirmary and prescribed Dilantin.[3]   (Id.). Defendant also points out, as Plaintiff has admitted, that on February 28, 2002, Defendant ordered that X-rays of Plaintiff's face, neck, and knee be taken at Georgia State Prison. (Id.). According to Defendant, the facts of the case are simply not indicative of deliberate indifference.

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[4]   Anderson v.

---

[2]Percogesic is a pain reliever and fever reducer.

[3]Dilantin is an antiepileptic drug used to prevent seizures.

[4]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary

3

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond

---

judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255 (quoting <u>Adickes</u>, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> at 248.

### B.    Merits of Plaintiff's Claims

Bearing the above standard in mind, the Court concludes that Defendant is entitled to summary judgment. To survive Defendant's motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that Plaintiff had an objectively serious medical need, and (2) that Defendant acted with deliberate indifference to that need. <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004). Although Defendant argues otherwise (<u>see</u> doc. no. 11, pp. 4-6), the Court will assume that Plaintiff's alleged aliments, including his dizziness and seizures, as well as the alleged injuries resulting from his falls, constituted serious medical needs. However, to show that Defendant was deliberately indifferent to those needs, Plaintiff must offer some proof that Defendant: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendant disregarded that risk by (3) following a course of action which constituted "more than mere negligence." <u>Id.</u> In addition, the prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated in part on other grounds by* <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 n.9 (2002)); <u>see also</u> <u>Farrow v. West</u>, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003)("In <u>Hope v. Pelzer</u>, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the

5

Supreme Court criticized part of the qualified immunity analysis in <u>Hill</u>, but not <u>Hill</u>'s analysis of what constitutes a serious medical need of prisoners.").

Under this standard, Plaintiff's claims against Defendant must fail. To begin, the Court will address the period of time following Plaintiff's falls in February 2002. To the extent Plaintiff avers that his treatment for injuries resulting from his falls was deficient, he has produced no evidence to substantiate such a claim. Indeed, the evidence shows that Plaintiff received immediate and constant medical attention in the months immediately following his falls. Plaintiff received X-rays and medications, and reports in his own verified complaint that Defendant interviewed him weekly and regularly checked on Plaintiff's medical status. (Doc. no. 1, p. 7). Indeed, Plaintiff's chief complaint regarding the period following his falls is that Defendant refused to prescribe stronger pain medication.

Given these facts, there is nothing from which to suppose that Defendant was deliberately indifferent to Plaintiff's post-fall medical needs. Plaintiff does not aver that he did not receive medical attention following his falls, but rather that Defendant acted with deliberate indifference when he did not pursue Plaintiff's preferred course of treatment--namely, the prescription of stronger pain medication. The burden of proving deliberate indifference cannot be met simply by arguing that an inmate wanted a different type of treatment. <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . . <u>Id.</u> (citation omitted)).

The Court underscores here that "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." <u>West</u>, 320 F.3d at

6

1243 (internal quotation and citation omitted).  Furthermore, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991)(quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980)(Bowen, J.)).  In the absence of any evidentiary support for Plaintiff's claim that the care he received following his falls was deficient in any way, Plaintiff's accusation rings hollow.  In sum, a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment. Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

That said, a slightly closer issue is whether Defendant displayed deliberate indifference to a serious risk of harm when he discontinued Plaintiff's bunk profile.  Nevertheless, Plaintiff himself avers that before his falls in 2002, he had not complained of a seizure since 1998.  Nor does Plaintiff assert that he has suffered any additional falls since the February 2002 incidents. Although these facts may support the inference that Defendant acted negligently in discontinuing Plaintiff's bunk profile, they do not provide evidence for Plaintiff's charge of deliberate indifference.  Allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris, 941 F.2d at 1505.  As the Supreme Court has explained:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

7

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)

Here, Defendant made an expert medical judgment that Plaintiff no longer needed a bunk profile. Giving Plaintiff the benefit of the doubt, Defendant's conclusion turned out to be wrong, but there is no evidence from which to suppose that Defendant was subjectively aware that discontinuing Plaintiff's bunk profile would create a serious risk to Plaintiff's health. As the Supreme Court has explained, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Accordingly, the motion for summary judgment filed by Defendant should be granted, while Plaintiff's motion should be denied.

## III.   CONCLUSION

For the reasons explained above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, that the motion for summary judgment filed by Defendant be **GRANTED**, that a **FINAL JUDGMENT** be entered in favored of Defendant, and that this case be **CLOSED**.[5]

SO REPORTED and RECOMMENDED this 20th day of January, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5]Having determined that Plaintiff's claims fail on the merits, the Court need not reach Defendant's arguments regarding exhaustion of administrative remedies or qualified immunity. (See doc. no. 11, pp. 8-10).

8